**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC F. KILGORE, II,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, BELMONT CORRECTIONAL INSTITUTION,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-CV-01988-BYP<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Eric F. Kilgore, II ("Mr. Kilgore"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Kilgore is serving a sentence of three years in prison, along with a reserved indefinite prison term of 11 to 16 and a half years, after being convicted of aggravated robbery, felonious assault, and several firearm specifications.

Mr. Kilgore asserts six grounds for relief. Respondent Shelbie Smith, the Warden of Belmont Correctional Institution ("Warden"), filed an answer/return of writ on January 16, 2026. (ECF No. 7). Mr. Kilgore filed a traverse on April 13, 2026, which included a request for an evidentiary hearing. (ECF No. 10).

This matter was referred to me on October 28, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Kilgore's petition. (*See* ECF non-document entry dated October 28, 2025). For the reasons set forth below, I recommend that Mr. Kilgore's petition be DISMISSED and/or DENIED. I also recommend that the Court not grant Mr. Kilgore a certificate of appealability. Finally, I Mr. Kilgore's request for an evidentiary hearing is DENIED.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth Appellate District summarized the facts as follows:

> This appeal arises from an incident on September 13, 2020, where Mr. Kilgore, and co-defendant Iyaisha Palos-Grantham, robbed and assaulted the victim with a firearm at Ms. Palos-Grantham's residence. Mr. Kilgore was indicted on one count of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree, with one and three year firearm specifications; one count of kidnapping, in violation of R.C. 2905.01, a felony of the first degree, with one and three year firearm specifications; one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree, with one and three year firearm specifications; and one count of intimidation, in violation of R.C. 2921.04, a felony of the third degree, with one and three year firearm specifications. Ms. Palos-Grantham was also indicted for the offenses of aggravated robbery, kidnapping, and felonious assault with firearm specifications. Ms. Palos-Grantham, however, was not indicted for intimidation.

(ECF No. 7-1, Exhibit 12); *State v. Kilgore*, No. 21CA011826, 2023 WL 3698454, ¶ 2, 2023-Ohio-1786 (9th Dist. May 30, 2023).

## III. PROCEDURAL HISTORY

### A. State Court Conviction

On February 4, 2021, Mr. Kilgore was indicted in the Lorain County Court of Common Pleas on: (1) one first-degree felony count of aggravated robbery in violation of O.R.C. §§ 2911.01(A) and (C); (2) one first-degree felony count of kidnapping in violation of O.R.C. §§ 2905.01(B)(2) and (C)(1); (3) one second-degree felony count of felonious assault in violation of O.R.C. §§ 2903.11(A) and (D)(1)(a); and (4) one third-degree felony

count of intimidating a victim in violation of O.R.C. §§ 2921.04(B)(1) and (D). (ECF No. 7-1, Exhibit 1). Each count also carried one-year and three-year firearm specifications. *Id.* On March 5, 2021, Mr. Kilgore pled not guilty to all charges. (ECF No. 7-1, Exhibit 2).

On August 31, 2021, Mr. Kilgore executed a written waiver of his right to a trial by jury. (ECF No. 7-1, Exhibit 5). The waiver was not filed on the public docket until September 1, 2021, after the bench trial commenced. *Id*. On September 1, 2021, the trial court found Mr. Kilgore guilty on the aggravated robbery and felonious assault counts, along with the accompanying firearm specifications, but acquitted him of kidnapping and intimidating a victim. (ECF No. 7-1, Exhibit 6). On December 9, 2021, the trial court merged the firearm specifications and sentenced Mr. Kilgore to a term of three years in prison on them. (ECF No. 7-1, Exhibit 9). The court also merged the aggravated robbery and felonious assault counts and sentenced Mr. Kilgore to an indefinite term of 11 to 16 and a half years on the aggravated robbery charge, but reserved that sentence. *Id*.

**B. <u>Direct Appeal</u>**

On December 29, 2021, Mr. Kilgore, through counsel, timely filed a notice of appeal to the Ninth Appellate District. (ECF No. 7-1, Exhibit 9). In his appellate brief, Mr. Kilgore raised the following assignments of error:

1. The verdict as to the gun specification is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

2. The trial court's verdict should be set aside as an impermissible inconsistent bench trial verdict.

3. The trial court was without jurisdiction to conduct a bench trial, because the jury waiver in the case at bar was not executed in strict compliance with statutory requirements.

4. Mr. Kilgore was deprived of his rights to effective assistance of counsel by trial counsel's and the court's failure to fairly and adequately protect his interest due to counsel's conflicts in representation of multiple co-defendants in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.

(ECF No. 7-1, Exhibit 10).

On May 30, 2023, the Fifth Appellate District affirmed. (ECF No. 7-1, Exhibit 12). Mr. Kilgore, through counsel, timely appealed to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 13). In his memorandum in support of jurisdiction, Mr. Kilgore raised a single proposition of law:

1. Does strict compliance with R.C. 2945.05 include the filing of the jury waiver prior to the commencement of a bench trial in a felony matter?

(ECF No. 7-1, Exhibit 13).

On September 6, 2023, the Ohio Supreme Court declined to accept jurisdiction over the appeal, with three justices dissenting. ECF No. 7-1, Exhibit 16; *State v. Kilgore*, 171 Ohio St. 3d 1420, 216 NE.3d 685 (Table), 2023-Ohio-3100 (Sept. 6, 2023).

**C. <u>Motion for New Trial</u>**

On October 27, 2023, Mr. Kilgore, through counsel, filed a motion in the trial court for leave to file a motion for a new trial pursuant to Ohio Criminal Rule 33(A)(6). (ECF No. 7-1, Exhibit 17). In the motion, Mr. Kilgore argued that new evidence undermined his conviction on the firearm specification because the victim had recanted his testimony regarding whether Mr. Kilgore had a gun during the robbery. (ECF No. 7-1, Exhibit 18). Mr. Kilgore supported his motion with an affidavit from the victim stating that he did not actually see a firearm and instead only presumed that Mr. Kilgore had one. *Id*.

On the same day, the trial court granted Mr. Kilgore's motion for leave to file a motion for a new trial. (ECF No. 7-1, Exhibit 20). However, on December 4, 2023, Mr. Kilgore,

through counsel, withdrew his motion. (ECF No. 7-1, Exhibit 24).

**D. <u>Renewed Motion for New Trial</u>**

On May 14, 2024, Mr. Kilgore, now acting *pro se*, refiled his motion for leave to file a motion for a new trial, again arguing that the victim's affidavit recanting his testimony regarding the presence of a firearm constituted new evidence that undermined Mr. Kilgore's conviction. (ECF No. 7-1, Exhibit 26). On June 11, 2024, the trial court granted Mr. Kilgore's motion for leave to file a motion for a new trial. (ECF No. 7-1, Exhibit 29). On July 8, 2024, the trial court denied Mr. Kilgore's motion for a new trial, holding that the affidavit from the victim was not credible and was not a direct recantation of his earlier trial testimony. (ECF No. 7-1, Exhibit 32).

Mr. Kilgore timely appealed to the Ninth Appellate District. (ECF No. 7-1, Exhibit 33). In his appellate brief, Mr. Kilgore raised the following assignments of error:

1. The trial court abused its discretion when it did not hold an evidentiary on appellant's pro se motion for a new trial pursuant to Ohio Crim. Rule 33(A)(6).

2. The trial court erred when it refused to grant appellant's pro se motion for a new trial pursuant to Ohio Criminal Rule 33(A)(6).

(ECF No. 7-1, Exhibit 34).

On February 24, 2025, the Ninth Appellate District affirmed. (ECF No. 7-1, Exhibit 36). Mr. Kilgore appealed to the Ohio Supreme Court, raising the following proposition of law:

1. The trial court abused its discretion when it did not hold an evidentiary hearing on Appellant's po se motion for a new trial pursuant to Ohio Crim. Rule 33(A)(6) violating appellant's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, § 10 of the Ohio Constitution.

2. The trial court erred when it refused to grant Appellant's pro se motion for a new trial pursuant to Ohio Crim. Rule 33(A)(6) violating appellant's due process

> rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, § 10 of the Ohio Constitution.

(ECF No. 7-1, Exhibits 37-38). On June 24, 2025, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 7-1, Exhibit 39).

**E. Federal Habeas Action**

On August 27, 2025, Mr. Kilgore, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition in the United States District Court for the Southern District of Ohio. (ECF No. 1). Mr. Kilgore's habeas petition raises six grounds for relief:

1. The verdict as to the gun specification is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

2. The trial court's verdict should be set aside as an impermissible inconsistent bench trial verdict.

3. The trial court was without jurisdiction to conduct a bench trial, because the jury waiver in the case at bar was not executed in strict compliance with statutory requirements.

4. Petitioner was deprived of his rights to effective assistance of counsel by trial counsel's and the court's failure to fairly and adequately protect his interest due to counsel's conflicts in representation of multiple co-defendants in contravention of the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution.

5. The trial court abused its discretion when it did not hold an evidentiary hearing on petitioner's pro se motion for a new trial.

6. The trial court erred when it refused to grant petitioner's pro se motion for a new trial.

*Id.*

On September 18, 2025, the petition was transferred to this Court. (ECF No. 2). On January 16, 2026, the Warden filed an answer/return of writ. (ECF No. 7). Mr. Kilgore filed a traverse on April 13, 2026, in which he included a request for an evidentiary hearing. (ECF No. 10).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lorain County Court of Common Pleas sentenced Mr. Kilgore, and the Court takes judicial notice that Lorain County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Kilgore's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead,

"federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### C. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes

only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court

relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. <u>Cognizability</u>

The Warden first argues that the Court should dismiss Mr. Kilgore's Third, Fifth, and Sixth grounds for relief because they are not cognizable in habeas. The Warden's argument is well-taken.

In his third ground for relief, Mr. Kilgore argues that the trial court lacked jurisdiction to conduct a bench trial because his jury trial waiver was not executed in strict compliance with the requirements of the relevant Ohio statute, O.R.C. § 2945.05. Mr. Kilgore does not dispute that he executed the waiver or that he was advised of his right to a trial by jury. Instead, he argues that the waiver was not filed on the public docket until after the bench trial began, even though he asserts that § 2945.05 requires that it be filed before the trial.

As noted above, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey*, 500 F.3d at 519; *see also Estelle*, 502 U.S. at 67-68. Mr. Kilgore's argument relates solely to the statutory requirements of O.R.C. § 2945.05, which is purely a question of state law. As a result, his third ground for relief is not cognizable . *See Brown v. Smith*, No. 3:11CV01750, 2014 WL 1493123, at *26 (N.D. Ohio Apr. 11, 2014) (Pearson, J.) (holding that question of whether jury waiver strictly complied with O.R.C. §

2945.05 was "a matter of state law, which is not cognizable in habeas"); *Richmond v. LaRose*, No. 1:16CV472, 2018 WL 7140090, at *10 (N.D. Ohio Dec. 11, 2018), *report and recommendation adopted*, 2019 WL 358641 (N.D. Ohio Jan. 29, 2019) (holding that challenge to application of O.R.C. § 2945.05 was not cognizable); *Mason v. Stuff*, No. 5:25-CV-00636-DCN, 2025 WL 3687407, at *5 (N.D. Ohio Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 447702 (N.D. Ohio Feb. 17, 2026) (same).

The same is true of Mr. Kilgore's fifth ground for relief, in which he asserts that the trial court abused its discretion when it failed to hold an evidentiary hearing on his motion for a new trial. "There is no free-standing federal constitutional right to a new trial nor to any particular procedure for deciding motions for new trial." *Young v. Wainwright*, No. 3:18CV2933, 2019 WL 13400363, at *2 (N.D. Ohio June 13, 2019). Courts have thus rejected a petitioner's argument that the Ohio courts should have conducted a hearing on the petitioner's motion for a new trial, holding that such a claim is not cognizable. *See, e.g.*, *Walker v. Schweitzer*, No. 5:17cv2361, 2020 WL 981431 at *14-15 (N.D. Ohio Feb. 7, 2020), *report and recommendation adopted*, 2020 WL 977965 (N.D. Ohio Feb. 28, 2020) (petitioner's argument that trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to hold hearing on motion for new trial was not cognizable); *Cannon v. Potter*, No. 1:16-cv-01849, 2018 WL 10038848, at *23 (N.D. Ohio Feb. 20, 2018), *report and recommendation adopted*, 2019 WL 4315931 (N.D. Ohio Sept. 12, 2019) (claim that state court violated petitioner's due process rights by denying motion for leave to file motion for new trial without a hearing was not cognizable).

Finally, in his sixth ground for relief, Mr. Kilgore argues that the trial court erred in denying his motion for a new trial. As with his jury waiver claim, Mr. Kilgore's argument

that the trial court misapplied Ohio Criminal Rule 33(A)(6) is not cognizable. *See Woodson v. Ohio*, No. 1:19 CV 0339, 2022 WL 854329, at *2 (N.D. Ohio Mar. 22, 2022) ("a claim that an Ohio court misapplied Ohio law when deciding a motion for a new trial is not cognizable on habeas review"); *Mock v. Bracy*, No. 4:22-cv-00937, 2024 WL 2347279, at *21 (N.D. Ohio May 22, 2024) (petitioner's argument that state courts misapplied Ohio law in denying motion for leave to file motion for new trial was not cognizable).

Even if Mr. Kilgore were not alleging that the Ohio courts misapplied Ohio law, however, his claim would not be cognizable. Where a petitioner alleges that the state courts improperly denied his motion for a new trial, a federal habeas court can review the denial "only for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009). "To establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Mr. Kilgore has not shown that the trial court's rejection of the victim's alleged recantation was so egregious as to violate his right to a fundamentally fair trial. I therefore recommend that the Court dismiss Mr. Kilgore's third, fifth, and sixth grounds for relief as noncognizable.

**B. <u>Procedural Default</u>**

The Warden next argues that Mr. Kilgore procedurally defaulted on his first, second, and fourth grounds for relief because he did not present them at all levels of the state court review process. I agree.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (cleaned up)). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id.* at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

Mr. Kilgore raised each of his first four grounds for relief in his direct appeal to the Ninth Appellate District. (ECF No. 7-1, Exhibit 10). In his subsequent appeal to the Ohio Supreme Court, however, Mr. Kilgore argued only that his jury waiver was invalid because it was not filed on the public docket before the start of the bench trial. (ECF No. 7-1, Exhibit 14). He did not raise any argument regarding the sufficiency of the evidence, the inconsistency of the trial court's verdict, or his trial counsel's alleged ineffectiveness, and thus did not fairly present his first, third, or fourth assignments of error at all levels of the state court review process. As a result, Mr. Kilgore procedurally defaulted on those claims. *See Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020) (holding that petitioner procedurally defaulted on claim by failing to raise it to Ohio Supreme Court); *Battiste v. Miller*, No. 1:17-cv-128, 2019 WL 6221477, at *12 (N.D. Ohio July 8, 2019), *report and recommendation adopted*, 2019 WL 4385735 (N.D. Ohio Sept. 13, 2019) ("because Battiste failed to fairly present his manifest-weight claim to the Ohio Supreme Court, and because state law no longer allows him to raise that claim, it is procedurally defaulted").

Mr. Kilgore's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Kilgore has not responded to the Warden's procedural default argument and does not argue that he has cause to excuse his procedural default. Accordingly, I recommend that the Court dismiss Mr. Kilgore's first,

second, and fourth grounds for relief as procedurally defaulted. Out of an abundance of caution, however, I will analyze the merits of those claims as well.

### C. <u>Merits</u>

#### *1. Ground One: Sufficiency of the Evidence*

In his first ground for relief, Mr. Kilgore argues that there was insufficient evidence to support his conviction on the firearm specification. Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir.

2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Mr. Kilgore argues that there was insufficient evidence to support his conviction because there was no physical evidence that he had a firearm and because witnesses were not qualified to determine whether the alleged firearm was a real gun or a toy. Mr. Kilgore argues that Ohio law required the State to prove that the gun was operable and that the State failed to meet its burden.

The Ninth Appellate District considered and rejected Mr. Kilgore's argument on the merits during his direct appeal, holding as follows:

> {¶7} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.
>
> {¶8} Mr. Kilgore was convicted of aggravated robbery pursuant to R.C. 2911.01(A)(1), which states, in part, that "[n]o person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *." Mr. Kilgore was also convicted of two firearm specifications pursuant R.C. 2941.145 for "[having] a firearm on or about [his] person or under [his] control while committing the offense and display[ing] the firearm, brandish[ing] the firearm, indicat[ing] that [he] possessed the firearm, or us[ing] it to facilitate the offense." Because Mr. Kilgore only challenges whether the State presented sufficient evidence to prove the operability of the firearm, we will limit our analysis accordingly.
>
> {¶9} "In determining whether a firearm is operable, the trier of fact examines the totality of the circumstances." *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 8. "Proof of the operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of a firearm by the defendant and an implicit threat to shoot it." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 8; *see also* R.C. 2923.11(B)(2). "[W]itness testimony that

the defendant was holding a gun while committing a robbery create[s] an implicit threat to shoot and [is] sufficient proof of operability." *Id*. at ¶ 13.

{¶10} Here, even though the firearm was never recovered, the evidence provided by the State, if believed, sufficiently established Mr. Kilgore brandished and used a firearm in the commission of aggravated robbery and the firearm was operable. At trial, the victim testified:

* * *

> I seen somebody with a gun. That's when I first got pistol whipped. I went down. I was held at gunpoint.

* * *

Additionally, the victim testified Mr. Kilgore hit him with a black gun two or three times on the side of his face, temple area. The victim further testified he was laying on his stomach with his forehead on the carpet and Mr. Kilgore pressed the gun to the back of his head while Ms. Palos-Grantham obtained the passwords for his cellphone and Chase banking mobile app. According to the victim, after Ms. Palos-Grantham transferred the money to her own account, Ms. Palos-Grantham and Mr. Kilgore "talked about possibly killing [him]," but decided instead to take him downstairs and have him lie face down in the grass behind the apartment. Mr. Kilgore also took the victim's driver's license and told him if he tries to "retaliate or do anything, he'll come to Toledo and kill [him]."

{¶11} Deputy Matt Schilke testified the victim had some swelling and a "knot" from his eye bone going toward his ear along his temple. The victim's injuries were photographed and Deputy Schilke testified the injuries are consistent with being struck in the head with a firearm.

{¶12} Upon viewing the evidence in a light most favorable to the State, we conclude a rational trier of fact could have found beyond a reasonable doubt Mr. Kilgore used and brandished a firearm in the commission of aggravated robbery and the firearm was operable.

(ECF No. 7-1, Exhibit 12).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I agree that a rational trier of fact could have found beyond a reasonable doubt that Mr. Kilgore used an operable firearm during the robbery based on the victim's testimony and the testimony of Deputy Schilke that the victim's injuries were consistent with being struck by a firearm.

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Kilgore guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable. I alternatively recommend that the Court deny Mr. Kilgore's first ground for relief on the merits.

***2. Ground Two: Inconsistent Verdict***

In his second ground for relief, Mr. Kilgore argues that the verdict against him should be set aside because the trial court convicted him of the firearm specifications while convicting his co-defendant, Ms. Palos-Grantham of aggravated robbery without a firearm specification.

"The problem for [Mr. Kilgore] is that there is no authority to support the legal proposition that underlies his claim" that his constitutional rights were violated because the verdict against him is allegedly inconsistent with the verdict against Ms. Palos-Grantham. *Tackett v. Trierweiler*, 956 F.3d 358, 372 (6th Cir. 2020). "Rather, the Supreme Court has held that inconsistent verdicts do not present a constitutional problem." *Id*. (citing *Harris v. Rivera*, 454 U.S. 330, 345 (1981)); *see also Hollins v. Smith*, No. 24:3023, 2024 WL 5316651, at *3 (6th Cir. Sept. 5, 2024) (unpub.) (holding that Ohio appellate court's rejection of inconsistent verdict argument was not contrary to or an unreasonable application of clearly established federal law).

Moreover, while Mr. Kilgore relies on the Second Circuit's decision in *United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960), which held that judges in bench trials are held to a higher standard than juries with respect to the need to issue consistent verdicts, only the holdings of the Supreme Court constitute clearly established law for purposes of AEDPA.

*White*, 572 U.S. at 419. Mr. Kilgore does not cite any Supreme Court decisions adopting *Maybury*'s reasoning, and he therefore cannot show that the Ninth Appellate District's decision was contrary to or an unreasonable application of clearly established law.

### *3. Ground Four: Ineffective Assistance of Trial Counsel*

Finally, in his fourth ground for relief, Mr. Kilgore argues that he received the ineffective assistance of trial counsel because his counsel represented both Mr. Kilgore and his co-defendant, Ms. Palos-Grantham, and thus operated under an impermissible conflict of interest.

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 466 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475 (1978)). If a defendant's counsel is operating under a conflict of interest, the attorney's actions may constitute ineffective assistance of counsel under the Sixth Amendment in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006).

Under *Strickland*, a petitioner must make two showings. First, the petitioner "must show that counsel's performance was deficient," which 'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 687). Second, the petitioner "must show that the deficient performance prejudiced the defense[,] . . . [which] requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Gillard*, 445 F.3d at 890 (quoting *Strickland*, 466 U.S. at 687) (alterations in original).

"[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. To demonstrate an actual conflict of interest, the petitioner must show "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350)."An 'actual conflict,' for purposes of the Sixth Amendment is 'a conflict of interest that adversely affects counsel's performance.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017) (quoting *Mickens*, 535 U.S. at 172 n.5 (1981)). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350.

The Ninth Appellate District rejected Mr. Kilgore's ineffective assistance claim on the merits as follows:

> {¶25} "The Sixth Amendment right to assistance of counsel embraces the correlative right to representation that is free from conflicts of interest." *State v. Worrell*, 9th Dist. Summit Nos. 23378, 23409, 2007-Ohio-7058, ¶ 23. "[W]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *Id.* at ¶ 25, quoting *State v. Gillard*, 64 Ohio St.3d 304, 311 (1992). "Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or adverse effect will be presumed." (Internal quotations and citations omitted.) *Worrell* at ¶ 25.
>
> {¶26} On April 16, 2021, fifteen days prior to the start of the bench trial, the trial court addressed the parties regarding joint representation. At that time, the trial court separately inquired of counsel, Mr. Kilgore, and Ms. Palos-Grantham regarding any potential conflicts and whether the co-defendants' interests were aligned with each other. Counsel indicated that, after reviewing discovery, he did not know of any reason a conflict would arise between the co-defendants' interests at trial. Further, the trial court separately asked Mr. Kilgore and Ms. Palos-Grantham a series of questions regarding their legal rights, as well as the dangers and pitfalls of joint representation. The co-defendants responded they understood their rights to have separate counsel, and also understood the dangers and pitfalls of joint representation. As such, the trial court found Mr. Kilgore and Ms. Palos-Grantham "knowingly and intelligently and voluntarily enter[ed] into joint representation[.]" The State noted its objection to joint representation on the record due to the risk of unforeseen conflict and the inability for the State to negotiate a plea deal with either Mr. Kilgore or Ms. Palos-Grantham. The

trial court also advised Mr. Kilgore and Ms. Palos-Grantham that, at any time in the future, they could hire their own counsel. Given the foregoing, we cannot say the trial court failed to adequately investigate any potential conflict. *See Worrell* at ¶ 26. At no time at trial did Mr. Kilgore object to joint representation.

{¶27} " 'In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' " *Worrell*, 2007-Ohio-7058, at ¶ 23, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "To establish the constitutional predicate for a claim of ineffective assistance of counsel, a defendant must show that his counsel actively represented conflicting interests. A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." (Internal citation omitted.) *Worrell* at ¶ 23.

{¶28} As this Court previously stated:

> [a]n actual conflict of interest, for purposes of the Sixth Amendment, is a conflict of interest that adversely affects counsel's performance. Thus, to prove an actual conflict of interest, the defendant must show that his counsel actively represented conflicting interests, and that the conflict actually affected the adequacy of his representation. In order to show such a conflict, a defendant must point to specific instances in the record to suggest an actual conflict or impairment of [his] interests. An adverse effect is established where the defendant points to some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance. While it is not necessary to prove that the defense theory would have been successful, it is necessary to show that the alternative theory was viable. Additionally, an appellant must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

(Internal quotations and citations omitted.) *State v. Jackson*, 9th Dist. Summit No. 27478, 2015-Ohio-4356, ¶ 13.

{¶29} Here, Mr. Kilgore generally argued "[c]ounsel's theory of the case [that Ms. Palos-Grantham was in a relationship with both Mr. Kilgore and victim and a fist fight broke out between the two men] explicitly [hurt] Mr. Kilgore." However, Mr. Kilgore has not pointed to any plausible defense strategy or tactic that could have been pursued by counsel but was not pursued due to an actual conflict impairing counsel's performance. *See Jackson* at ¶ 13. Therefore, Mr. Kilgore failed to show an actual conflict that adversely affected his counsel's performance.

(ECF No. 7-1, Exhibit 12).

Applying AEDPA deference, the Ninth Appellate District's decision was not contrary

to or an unreasonable application of clearly established law. The Ninth Appellate District applied the correct legal standard, noting that the Sixth Amendment guarantees a defendant the right to representation free from a conflict of interest. However, the Ninth Appellate District also reasonably held that Mr. Kilgore failed to show that his counsel was under an actual conflict of interest because he did not identify any strategy or tactic that his counsel could have pursued had his counsel not also been representing Ms. Palos-Grantham.

Moreover, as the Ninth Appellate District also held, a defendant may waive a conflict of interest. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000). Thus, even if the Ninth Appellate District had erred in concluding that counsel was not operating under a conflict, fairminded jurists could agree with its conclusion that Mr. Kilgore knowingly and intelligently waived any conflict. *See United States v. Collins*, 434 F. App'x 434, 441 (6th Cir. 2011) (holding that defendant validly waived conflict where she "was informed of the potential conflict by the government's motion, was further informed of the potential through a hearing, and—despite these events—still actively fought to keep her counsel"); *Brooks v. Bobby*, No. 1:02CV1416, 2006 WL 2456494, at *11-12 (N.D. Ohio Aug. 22, 2006) (holding that trial judge did not err in accepting petitioner's conflict waiver where trial judge "specifically inquired as to the Petitioner and his co-defendant understood the potential for conflicts, and both answered 'yes'").

It is true that a defendant's waiver does not necessarily bind the courts. *See Wheat v. United States*, 486 U.S. 153, 162 (1988). Instead, "[a] waiver's validity depends on the particular facts and circumstances of a case." *Bray v. Cason*, 375 F. App'x 466, 472 (6th Cir. 2010) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). But Mr. Kilgore has not identified any facts or circumstances that would make the waiver invalid under the

circumstances presented here given Mr. Kilgore's discussion with the trial court. *See Collins*, 434 F. App'x at 441 (holding that district court did not abuse discretion in permitting defendant to waive conflict where "[w]hile implicating [spouse] was one possible defense, it was not required or even necessarily the best defense"); *Bray*, 375 F. App'x at 472 (holding that state court did not err in accepting defendant's waiver of conflict where trial court informed defendant of possible conflict and confirmed defendant had discussed the matter with counsel). I alternatively recommend that the Court deny Mr. Kilgore's fourth ground for relief on the merits.

### D. Evidentiary Hearing

In his traverse, Mr. Kilgore also requests that the Court hold an evidentiary hearing. Habeas Rule 8(a) provides that a court may, but is not required to, hold an evidentiary hearing on a petition. Rules Governing § 2254 Cases R. 8(a). Under § 2254(e)(2), if the petitioner has failed to develop the factual basis for the claim in state court, the court may hold an evidentiary hearing only in limited circumstances, including where the factual predicate of the claim could not have been previously discovered with due diligence. *See* 28 U.S.C. § 2254(e)(2). "When deciding whether to grant an evidentiary hearing, a court must consider whether such a hearing could enable petitioner to prove the habeas petitioner's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims." *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at *4 (N.D. Ohio Apr. 29, 2024) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

Mr. Kilgore has not demonstrated that an evidentiary hearing would enable him to prove any factual allegations that would entitle him to habeas relief. Instead, he argues only that an evidentiary hearing "would be meaningful and would have the potential to advance [his] claims." (ECF No. 10, PageID # 780). Because Mr. Kilgore has not shown that an

evidentiary hearing is warranted, and because Mr. Kilgore's claims are procedurally defaulted or noncognizable, his motion for an evidentiary hearing is denied.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which

specific issue or issues satisfy the showing required by [§ 2253(c)(2)].”). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Kilgore has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Kilgore’s petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability. Finally, Mr. Kilgore’s request for an evidentiary hearing is DENIED.

Dated: August 14, 2026

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge’s proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party’s objections within fourteen (14) days after being served with a copy thereof.** The

> District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.
>
> *Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).